## DOYLE v. BIRDSELL et al.

A vendor contracted to convey real estate to a purchaser, who sent to the vendor for execution a deed, in which a third person was named as grantee. The vendor executed it and sent it to the purchaser, who, in a letter to the vendor, called attention to a defect in the title. Subsequently, the purchaser wrote that the grantee wanted the land and would wait until the transaction could be closed. The vendor refused to perfect the title. **Held,** that there was no contract between the vendor and grantee which the latter could enforce in equity.

(Opinion filed, July 3, 1907.)

Appeal from Circuit Court, Beadle County. Hon. CHARLES S. WHITING, Judge.

Action by A. H. Doyle against William H. Birdsell and others. From a judgment for defendants, plaintiff appeals. Affirmed.

*A. W. Wilmarth* and *Kelley & Chamberlain,* for appellant. *Henry C. Hinckley* and *L. C. Kemp,* for respondents.

HANEY, J. This is an action to enforce the specific performance of an alleged contract to transfer certain real property; damages being demanded in case specific performance cannot be awarded. The plaintiff alleges, in substance, that he and defendant Birdsell, through the Kelley Land Agency, represented by C. A. Kelley, the duly authorized agent of Birdsell, entered into a written contract by which Birdsell was to sell, and the plaintiff was to buy, a quarter section of land in Beadle county, for $800, "$50 down," and $750 when Birdsell furnished an abstract showing fee-simple title in himself and his right to convey to the plaintiff; that $50 was paid according to the terms of the contract, and $750 to Kelley, with instructions to pay over the same to Birdsell when he complied with the contract; that, in violation of this contract, Birdsell transferred his interest in the property to defendant Pearce, for the purpose of defeating the plaintiff's rights; that Pearce purchased with notice for the same purpose; that the value of the property is now $2,500; and that the plaintiff is ready and willing to perform on his part. All these allegations are put in issue by the separate answers of Birdsell and Pearce; the principal controversy being whether Birdsell contracted with the plaintiff through Kelley, acting as the former's agent, or whether he agreed to sell the land to Kelley; in other words, whether the plaintiff and defendant Birdsell entered into the contract alleged in the complaint, and the controlling question on this appeal being whether the learned circuit court was justified in making the following findings of fact: "(6) That no contract was entered into between plaintiff and defendant Birdsell for the sale of the land in question. * * * (10) That neither the Kelley Land Agency or C. A. Kelley was in any respect the agent of the defendant Birdsell, to sell or contract for sale the land in question; but such land agency, through said C. A. Kelley, its manager, was a principal to the only contract

of sale made. (11) That the plaintiff acted for himself as principal in purchasing, or contracting to purchase, said land, if any contract was made; such purchase and contract, if any, being with the Kelley Land Agency or C. A. Kelley, and the terms of such purchase or contract for purchase being unknown to this court."

The plaintiff resided at Mitchell, in this state; defendant Birdsell at Lockport, Ill.; and Kelley, who was manager of the Kelley Land Agency, at Huron, in this state. On June 27, 1901, Birdsell wrote Kelley: "Your letter of June 24th received. I wrote you that I would take $5.00 an acre clear. Now, if you want the land, and pay me $800 clear of all expenses to me, I will execute deed. You can send draft to the Joliet National Bank, and I will deliver the deed to them." Kelley replied: "Your letter of yesterday received. Have sent deed to your bank at Lockport. Please call and execute same, and they will return to bank here to be delivered to me. It is all right. I will take the land at $800 net to you. Don't fail to call and execute deed, but you must pay for abstract to date." On July 6th, Birdsell wrote Kelley: "Your deed came to the bank here and the description is wrong. * * * You can send check," etc. On July 12th, Kelley wrote the Joliet National Bank: I send you herewith warranty deed to be signed by W. H. Birdsell and Mary G. Birdsell, his wife. The deed is to be delivered to us on the payment to them of $800.00. I send herewith draft for $50.00 and you can deliver to Mr. Birdsell on the proper execution of the inclosed deed. You then return the deed to the Standard Savings Bank of this city, with instructions to deliver same to us on the payment of the balance of the purchase price, $750. The reason we do not send the entire amount is that we do not care to wait so long after we pay our money before we get our deed on record, as there is something liable to be filed before deed would get here that would affect the title to the land. You can explain this to Mr. Birdsell, so that he will know he is perfectly safe, and that if the deal should fall through he would have the $50.00 to pay him for his trouble. We will take up deed as soon as it gets to the bank here." In the deed mentioned in this letter, which was prepared by Kelley, the plaintiff was named as grantee. It was executed by Birdsell and wife, who received the

$50, and forwarded to the bank at Huron according to Kelley's request. On August 19th, Kelley wrote Birdsell refusing to accept the deed, because it appeared that Birdsell's claim to title rested on the foreclosure of a mortgage by advertisement, which contained no power of sale, and suggesting that Birdsell procure a quitclaim deed from the mortgagor. On August 20th, Kelley again wrote Birdsell, calling attention to some other defect in the title, which was subsequently remedied, and in which he said: Now, in regard to your proposition about sending back the $50.00. My man would not accept it under any consideration. He is very indignant about it, but will wait since explaining to him the condition and why we could not get the deal closed up. He wants your land, as he purchased some adjoining, and is going to move on in the spring. * * * Have given my man a written guaranty that I will close the deal as soon as you get a clear title." Having caused his mortgage to be foreclosed by action and obtained a sheriff's certificate of sale, Birdsell executed an assignment of the same, which he tendered to Kelley, and which Kelley refused to accept. Subsequently, he assigned the certificate to the defendant Pearce, and delivered to him a quitclaim deed. It is elementary that there can be no contract unless the minds of the parties meet and mutually agree. There was no suggestion that Kelley was not buying the land himself until after he had refused to accept Birdsell's title. He said in his acceptance of the latter's offer. "I will take the land at $800 net to you." True, the deed he prepared for Birdsell to execute named the plaintiff as grantee, but one may purchase land and take the record title in whom he pleases. There is no ambiguity in the language from which the understanding of the parties must be ascertained. Kelley did not state that he had procured a purchaser, that he had sold the land, or that any one had agreed to buy it. He said: "I will take it." If there was a valid enforceable contract, it was between Kelley and Birdsell, not between the plaintiff and Birdsell. This being so, all questions relating to the effect of performance, or part performance by the plaintiff, were eliminated, and it is immaterial whether the court erred in adjudging the defendant Pearce to be the owner of the premises. There could not be performance in whole or in part

of a contract which never existed. Having failed to establish the alleged contract, or any contract, with the defendant Birdsell, the plaintiff was entitled no relief whatever.

Certain alleged errors are assigned with reference to the introduction of evidence. None of these relate to the issue we have considered, and are therefore not material.

The judgment of the circuit court is affirmed.